Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000662
29-JAN-2015
08:02 AM

NO. CAAP-13-0000662

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STEPHEN P. FORMAN, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPECIAL PROCEEDINGS PRISONER NO. 12-1-0012)
(CRIMINAL NO. 09-1-0987)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

The instant appeal arises from the arrest and subsequent conviction of Petitioner-Appellant Stephen P. Forman (**Forman**) for the offense of unauthorized control of propelled vehicle (**UCPV**) in violation of Hawaii Revised Statutes (**HRS**) § 708-836 (Supp. 2013).[1] Forman appeals from the April 10, 2013 "Order Denying Motion for Post-Conviction Relief Granting New

---

[1] HRS § 708-836 provides, in relevant part:

**§708-836 Unauthorized control of propelled vehicle.** (1) A person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent . . . .

. . . .

(3) It is an affirmative defense to a prosecution under this section that the defendant:

(a) Received authorization to use the vehicle from an agent of the owner where the agent had actual or apparent authority to authorize such use[.]

Trial" (**Order Denying Forman's Rule 40 Petition**) entered in the Circuit Court of the First Circuit[2] (**circuit court**).

Forman contends the circuit court erred by not finding that he received ineffective assistance of counsel when his trial counsel (Counsel) chose not to interview a witness, Alfredo Bandalan (**Bandalan**).

## I. BACKGROUND

> On June 25, 2009, Honolulu Police Department officers Kenneth Creekmur and Nalei Sooto [(**Officer Sooto**)] stopped Forman while he was riding a moped on Ala Wai Boulevard. The moped's license decal was partially missing or had been removed, which, according to the officers, was not uncommon for mopeds that had been stolen.
>
> Forman identified himself to the officers and told them that he had just rented the moped but did not have the rental paperwork on him. Officer Sooto determined that the moped was registered to Adventure on 2 Wheels [(**Adventure**)]. . . .

State v. Forman, 125 Hawai'i 417, 420, 263 P.3d 127, 130 (App. 2011).

The police officers called Adventure and spoke to Adventure employee, Bandalan. Bandalan told the police officers that the moped was taken without permission. After being escorted to the location where Forman had been stopped and was being detained, Bandalan identified the moped as property of Adventure and Forman as a person he knew by the name of "Brazil," and stated that Forman did not have permission from Adventure to take the moped. Bandalan reiterated his statements to police in a "Honolulu Police Department Statement Form" (**252 Statement**). In his 252 Statement, Bandalan stated: "Unknown how Brazil was able to possess keys to moped!! Is usually in the lock box, which is not damaged." Officer Sooto arrested Forman for UCPV.

On June 30, 2009, Respondent-Appellee State of Hawai'i (**State**) charged Forman with one count of UCPV for "intentionally or knowingly" exerting unauthorized control over a moped "without the consent of [Adventure], owner of said vehicle[.]" Forman pled not guilty on July 23, 2009.

> At trial, Kim Voight [(**Voight**)], the owner/president of [Adventure], verified that the company was the registered owner of [the moped] and that the company referred to it as Moped No. 26.

---

[2] The Honorable Dexter Del Rosario presided.

According to Voight, Adventure's procedure for renting a moped required employees to ask the customer for a driver's license and verify that the customer is eighteen. Customers must provide a credit card number for a deposit in case the moped becomes damaged, but can pay rental fees by cash or credit card. A company employee informs the customer of the rental fees and shows the customer a contract. . . . According to Voight, no one would be allowed to use a moped without signing a contract.

Voight stated that the contracts are generated every time the company rents a moped and the records are kept in the regular course of business. The contracts are "locked up" after customers sign them and "dropped in a safe" once the mopeds are returned. After Forman's arrest, Voight attempted to locate an agreement "for a Moped No. 26 on or about June 25th, 2009," but could not find one. Voight reviewed the contracts "from that time period," and no contracts were missing from the sequence.

. . . .

Forman was the sole witness for the defense. He claimed that he was operating the moped under apparent authorization given to him by Bandalan, a company employee. According to Forman, on June 21, 2009, he went to the hostel where Adventure is located and Adam Weiss, a friend of Forman's girlfriend, introduced him to Bandalan. Forman testified that Bandalan rented him the moped for $40 a day, and he returned to the hostel four or five times to pay Bandalan, each time in cash. Forman also said that Bandalan gave him some paperwork, which he discarded without reading.

Voight verified that in June 2009 Bandalan was an employee of the company. She said Bandalan worked for the company for about two months before she fired him because "he kept bad paperwork" and was late. Prior to terminating Bandalan, Voight warned him "that he needed to keep his paperwork better" but his performance "got worse."

. . . [O]n the first day of trial, the court was informed that the State would not call Bandalan to testify; he was not in Hawai'i because he had been extradited to Kentucky a month earlier to stand trial on a rape charge. In response to Forman's concerns that Bandalan's absence might raise a "confrontation clause problem," the parties stipulated that they would make no reference to what Bandalan said to police.

On January 15, 2010, a jury found Forman guilty on one count of UCPV.

On February 1, 2010, Forman's [Counsel] filed a motion to withdraw, based on Forman's belief that Counsel was providing ineffective assistance. At the hearing on the motion, Forman said that before trial, he had located Bandalan and Bandalan agreed to testify on his behalf, that he told Counsel to subpoena Bandalan, but that Counsel refused, because "that's against my strategy." The circuit court asked Counsel for a response, to which Counsel replied, "I think he has arguments to be made. I think they should be made in

a formal setting. I don't think this would be the appropriate setting for that." The circuit court granted the motion to withdraw as counsel.

On March 9, 2010, Forman, represented by newly-appointed counsel Walter Rodby [(**Rodby**)], filed a motion for new trial on the grounds that Counsel provided ineffective assistance where he "failed to investigate, interview and subpoena a critical defense witness, [Bandalan], which resulted in the substantial impairment of a meritorious defense[.]" Forman acknowledged that the motion was made after [Hawai'i Rules of Penal Procedure (**HRPP**)] Rule 33's ten-day deadline but argued the deadline should not be rigidly applied out of fairness. The State argued that . . . Forman's motion should be denied because it was filed . . . 43 days late.

At the hearing on the motion for new trial, Forman introduced:

- An offer of proof that Adam Weiss "would also be able to corroborate that Mr. Forman was making rental payments on that moped to Bandalan" and that Weiss never talked to a public defender;

- An audio recording of a conversation between Rodby and Bandalan in which Bandalan said that he "rented the moped without documentation, and in fear of losing his job, he made false statements to the police" and that he never talked to an attorney representing "Brazil";

- Forman's testimony that he found Bandalan and that Bandalan agreed to make a statement to the effect that Forman was not aware that the moped was stolen; that he asked Counsel to talk to Bandalan but Counsel said "oh, it's against my strategy," and to his knowledge Counsel never talked to Bandalan;

- A note from Forman to Counsel, made during trial, which read, "You need to let the jury know I requested Mr. Bandalan & Adam to be subpoenaed but it went against your strategy."

Forman also orally moved to dismiss the charges because he received ineffective assistance of counsel. The circuit court denied the motion for new trial as untimely and denied the motion to dismiss.

After the hearing, the defense filed a sworn declaration from Bandalan, in which he asserted that he rented the moped to Forman, Forman paid Bandalan but Bandalan used the money for his own benefit, and that Bandalan did not tell Forman that he was using the rental fees for his own benefit. He also attested that Forman's attorney did not contact him about appearing in court.

The circuit court [denied Forman's motion for a new trial and] sentenced Forman to imprisonment for five years, subject to a mandatory minimum of one year and eight months as a repeat offender.

Forman, 125 Hawai'i at 420-21, 263 P.3d at 130-31 (footnote and brackets in original omitted).

On August 17, 2010, Forman appealed the circuit court's August 11, 2010 "Judgment of Conviction and Sentence." On September 8, 2011, this court affirmed Forman's "conviction without prejudice to a subsequent petition brought under HRPP Rule 40[.]" Forman, 125 Hawai'i at 427, 263 P.3d at 137. This court explained:

> Forman raises a prima facie claim of ineffective assistance. Because Forman was the sole witness in his defense, the jury might have found his testimony self-serving and not credible. Bandalan's testimony, if believed, would have corroborated Forman's testimony and supported his defense that he had the apparent authorization to use the moped. Thus, the failure to obtain Bandalan's testimony impaired this potentially meritorious defense. Bandalan's declaration that Counsel did not talk to him before trial, however, is insufficient evidence from which to conclude that Counsel was not diligent in investigating Forman's apparent-authorization defense. . . . [W]here ineffectiveness of counsel is the basis for a Rule 40 petition, the defendant must serve written notice of the hearing on counsel whose assistance has been challenged as ineffective and the counsel shall be given an opportunity to be heard. See HRPP Rule 40(f).

Id. (emphases added).

On February 15, 2012, Forman, proceeding pro se, filed a petition for post-conviction relief pursuant to HRPP Rule 40 (**Rule 40 Petition**). Forman obtained counsel on July 5, 2012, and filed a second Rule 40 Petition on August 13, 2012. The State filed its answer to Forman's Rule 40 Petitions on August 28, 2012. The circuit court ordered a hearing on Forman's Rule 40 Petition with respect to the issue of whether Counsel's failure to interview or subpoena Bandalan constituted ineffective assistance of counsel.

At the January 23, 2013 hearing, Counsel testified that a few months before trial and on other occasions leading up to trial, Forman informed him that he wanted Bandalan to testify as a witness for the defense. Counsel further testified that Forman explained that he believed Bandalan would testify that he lied to the police officers and in his 252 Statement and led Forman to believe he was authorized to use the moped. Counsel also testified that Forman informed him that he could find Bandalan,

but that Forman did not give him Bandalan's contact information or assist in finding Bandalan.

Counsel testified that he visited Adventure and the hostel located above Adventure where Bandalan allegedly lived while working for Adventure, but did not find any information on Bandalan's whereabouts. Counsel also testified he pulled up Bandalan's criminal record and learned that "[h]e had a theft conviction"; that he searched for Bandalan in several criminal databases "periodically for the months leading up to trial" and that "about 10 days before the trial, . .. . through a Google search[,]" he "discovered that Bandalan had been extradited to Kentucky to answer to charges involving rape [of a juvenile.]"

Counsel testified that Forman had told him "three slightly different accounts of how he came into possession [of the moped]," and that he suggested to Forman that Forman consider refraining from testifying and base his decision whether or not to testify on how the trial unfolded. Counsel further testified that despite his advice, Forman "was at all times adamant that he would testify, and essentially there were no circumstances under which he would not testify." Counsel stated he told Forman his strategy for trial did not include calling Bandalan as a witness because it was not in Forman's best interest. Counsel testified that on or about the second day of trial, he filed a motion to withdraw because Forman indicated he wanted to retain private counsel, but that he withdrew the motion on the fourth day of trial because Forman changed his mind.

Counsel testified to the following reasons for deciding that it was not in Forman's best interest to use Bandalan as a defense witness:

(1) If Bandalan did not testify, and Forman did testify, judgment of acquittal might result because the State would not be able to disprove Forman's version of events;

(2) If Bandalan did testify, the best case scenario was that he would testify that he lied to the police officers, lied in his 252 Statement, and lied to and stole from Voight;

(3) Because Voight appeared very credible and her anticipated testimony would discredit Bandalan's credibility,

6

Counsel could argue that if "Bandalan was sophisticated enough to trick [Voight] then why couldn't he also trick [Forman] into thinking that he had properly rented the moped"; and

(4) If Bandalan testified, the jury would learn of his criminal history, not find him credible, and might find Forman guilty by association with Bandalan.

Counsel summed up his opinion when he testified that he did not think Bandalan "was going to be a credible witness at all" and that Bandalan's "reliability was zero and his unpredictability was extremely high."

Forman testified that he repeatedly and consistently expressed his belief to Counsel that his defense depended on Bandalan testifying, gave Counsel Bandalan's cell phone number, and never agreed to Counsel's strategy of not calling Bandalan as a witness.

The circuit court filed its Order Denying Forman's Rule 40 Petition on April 10, 2013.

## II. STANDARD OF REVIEW

"In assessing claims of ineffective assistance of counsel, the applicable standard is whether, viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (internal quotation marks and brackets omitted) (quoting State v. Antone, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980)). A defendant who claims ineffective assistance of counsel meets his burden of proving that the assistance provided was not within the range of competence demanded of attorneys in criminal cases by establishing:

> 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant need only show a possible impairment of a potentially meritorious defense, not probable impairment or actual prejudice.

Wilton v. State, 116 Hawai'i 106, 110-11, 170 P.3d 357, 361-62 (2007) (citations, quotation mark, emphasis and brackets omitted).

## III. DISCUSSION

Forman argues that the circuit court erred in denying his Rule 40 Petition because Counsel provided ineffective assistance of counsel by not interviewing Bandalan.

> A primary requirement is that counsel must conduct careful factual and legal investigations and inquiries with a view to developing matters of defense in order that he may make informed decisions on his client's behalf; both at pretrial proceedings and at trial.
>
> . . . [W]hether to call witnesses in a criminal trial is normally a matter within the judgment of counsel and, accordingly, will rarely be second-guessed by judicial hindsight.
>
> . . . [T]he decision not to conduct a pretrial investigation of prospective defense witnesses cannot be classified as a tactical decision or trial strategy.

State v. Alpaca, 74 Haw. 54, 70-71, 837 P.2d 1298, 1307 (1992) (citation, internal quotation marks, ellipses, and omitted).

As in Alpaca, defense counsel chose not to interview a prospective defense witness that had clearly exculpatory evidence which would have exonerated Forman if believed. Alpaca, 74 Haw. at 69, 837 P.2d at 1306. Counsel's investigation was rendered inadequate by his decision to not even attempt to interview Bandalan once Bandalan was located. Counsel could have tried to interview Bandalan over the phone, but chose not to. "It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons." Id. at 71, 837 P.2d at 1307 (quoting State v. Templin, 805 P.2d 182, 188 (Utah 1990)). Under the circumstances of this case, Counsel's decision to not interview Bandalan "cannot be classified as a tactical decision or trial strategy" and thus constitutes deficient performance by counsel. Alpaca, 74 Haw. at 71, 837 P.2d at 1307. In addition, Forman met his burden of showing that there is a possibility that Counsel's failure to interview Bandalan substantially impaired Forman's apparent authority defense. Wilton, 116 Hawaiʻi at 111, 170 P.3d at 362.

## IV. CONCLUSION

The April 10, 2013 "Order Denying Motion for Post-Conviction Relief Granting New Trial" entered in the Circuit Court of the First Circuit is vacated and this case is remanded

8

with instructions for the circuit court to grant Forman's Rule 40 Petition.

DATED:  Honolulu, Hawai'i, January 29, 2015.

On the briefs:

Jefferson S. Willard
(Urbanc Willard Park & Kim)
for Petitioner-Appellant.

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge